# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DANIEL MENOLA, ANTHONY LYNCH, STANLEY BRZOZOWSKI, THOMAS P. LaDUCA, AND BRADLEY A. STEWART, <br><br> Plaintiffs, <br><br> v. <br><br> THE INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS, AFL-CIO, IUEC LOCAL #2, AND FRANK CHRISTENSEN, <br><br> Defendants. | No. 05 C 0075 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

On January 6, 2005, Plaintiffs filed a six-count Complaint naming as Defendants the International Union of Elevator Constructors (IUEC), its autonomous Local 2, and Frank Christensen, principal officer of Local 2. Plaintiffs, who are elevator mechanics and Journeyman helpers with Local 2, allege that Defendants engaged in violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiff Menola, an outspoken critic of Christensen and the union, alleges that Christensen convinced Menola's employer to terminate his employment and thereafter ensured that Menola remain unemployed. Plaintiffs Lynch, Brzozowski, LaDuca and Stewart allege that Defendants failed to assist them when they were laid-off by their employers or otherwise became unemployed, and that Defendants' refusal was part of a course of harassment and retaliation directed against them because of their previous complaints against Defendants. Defendants moved to dismiss the Complaint under *Fed. R. Civ. P. 12(b)(6)*, arguing that the five RICO allegations are improperly pled and that Plaintiff

Menola's claim of "potential interference with business advantage" is pre-empted by section 301(a) of the Labor Management Relations Act.[1]

A Rule 12(b)(6) motion tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). I should grant Defendants' Motion to Dismiss only if Plaintiffs cannot prove any set of facts in support of their claim that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Furthermore, I must accept all well-pleaded factual allegations in the Complaint as true, drawing all reasonable inferences from those facts in the Plaintiffs' favor. *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002). Stated another way, I should not grant Defendants' motion "unless no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

---

[1] Plaintiffs' Response was filed 10 days late; in fact, Plaintiffs filed their untimely motion without seeking leave to do so. In their Motion to Strike Plaintiffs' Response, Defendants correctly observe that pursuant to Local Rule 78.3, district courts in this Circuit may, and do, rule on moving parties' motions without further hearing when non-moving parties fail to file timely responsive pleadings. *See, e.g.*, *Martin v. Special Agents*, 169 F. Supp. 2d 805, 807 (N.D. Ill. 2001) (reaching a decision on defendants' motion to dismiss without benefit of a response). In this case, I would have permitted Plaintiffs the opportunity to file an untimely brief had they requested permission to do so. While I am troubled by their late submission, and the difficulty their attorney has demonstrated in making timely filings in this Court, I did consider Plaintiffs' Response in reaching my conclusions. Plaintiffs' counsel is warned that such tardiness will not be so easily countenanced in the future.

### A. Failure to Plead RICO Violations

Five of Plaintiffs' six counts allege violations of § 1962(c) of RICO.[2] Plaintiffs alleging RICO violations under this section must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering." *Viacom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 778 (7th Cir. 1994) (quoting *Sedima, S. P. R. L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Defendants contend that Plaintiffs failed to properly plead the latter three elements. Addressing these elements in reverse order, I find that Defendants have met their burden and are entitled to dismissal of the Complaint.

#### 1. Failure to Allege Racketeering Activity

In Count I of the Complaint, Plaintiff Menola alleges that Defendants "set upon a course of illegal retaliation and actves (sic) designed to punish" him and other members of Local 2 and the IUEC. In Counts III through VI, Defendants Lynch, Brzozowski, LaDuca and Stewart repeat or make similar allegations. According to Plaintiffs, Defendants' illegal activities include "failure to represent members at grievances, mismanaging union affairs, mismanagement of the spending of union funds, retaliation against members, interference with members' employers, [and] attempting to use union power and rules in an illegal and arbitrary manner in order to punish dissident members" such as Plaintiffs. *Pl. Compl.* Count I ¶ 11, Counts III - VI ¶ 9. Defendants argue that these allegations fall far short of pleading racketeering activity.

---

[2]In various parts of the Complaint, Plaintiffs cite to 18 U.S.C. § 1951 and 18 U.S.C. § 1952(c). I presume, based on the content of the Complaint and proper references to the RICO statute found elsewhere in it, that Plaintiffs intended to cite to 18 U.S.C. § 1961 et seq. and 18 U.S.C. § 1962(c) throughout the Complaint.

"Racketeering activity" is a term specifically defined within the RICO statute. *See* 18 U.S.C. § 1961(1)(A)-(G). None of the allegations in Plaintiffs' original complaint constitute racketeering activity under the statute. However, in their Response to Defendant's Motion, Plaintiffs explain that by alleging mismanagement of union funds they actually alleged "embezzlement of union funds." An act of embezzlement of union funds indictable under 29 U.S.C. § 501(c) does constitute racketeering activity under §1961(1)(C). That said, an act does not rise to the level of "embezzlement of union funds" under RICO unless the act "enrich[ed] the officers (or their friends) at the expense of the union." *United States v. Vandenbergen*, 969 F.2d 338, 339 (7th Cir. 1992).

Plaintiffs failed to allege that any of Defendants' acts enriched union officers at the expense of the union, or that Christensen's actions "feathered [his] own nest[ ] to the detriment of the union." *Id*. Even construed as broadly as Plaintiffs' Response would like, the allegations do not rise to the level of a RICO violation. In reaching this conclusion, I do not believe that I am holding Plaintiffs to an unduly high pleading standard. No actual allegation of embezzlement of union funds appears in the Complaint, nor are there sufficient facts in the Complaint to support an inference that Plaintiffs intended to or could have alleged of embezzlement of funds within the meaning of § 501(c) and § 1961. Plaintiffs clearly failed to plead a racketeering activity.

    2. *Failure to Allege a Pattern of Racketeering Activity*

Even if Plaintiffs had successfully alleged racketeering activity, in order to withstand Defendants' Motion their Complaint must also have alleged a "pattern of racketeering," which is a "crucial element of a section 1962 claim." *See Elliot v. Chicago Motor Club Ins.*, 809 F.2d

347, 349 (7th Cir. 1986). Failure to plead the pattern element renders a complaint inadequate as a matter of law. *See J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 820 (7th Cir. 1991) (concluding that plaintiff's inability to plead a RICO pattern rings "death knell" for RICO count in proposed amended complaint).

A pattern of racketeering activity is comprised of at least two acts of racketeering activity (predicate acts) within a 10-year period. 18 U.S.C. § 1961(5). These activities must be continuous and related.

> [F]or the predicate acts to be sufficiently continuous to amount to a pattern of racketeering activity, "the predicate acts must be ongoing over an identified period of time so that they can be fairly viewed as constituting separate transactions, i.e., 'transactions somewhat separated in time and place.'" And at the same time, there must be a "relationship among activities – i.e., activities leading up to coordinated action."

*Medical Emergency Service Assoc., S.C. v. Foulke*, 844 F.2d 391, 395 (7th Cir. 1988) (citations omitted). "Predicate acts are related if the acts 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Hartz v. Friedman*, 919 F.2d 469, 472 (7th Cir. 1990) (quoting *H. J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (citation omitted)). Four factors determine whether a RICO pattern exists, including "(1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and, (4) the occurrence of distinct injuries." *Hartz*, 919 F.2d at 472 (citations omitted).

At best, Plaintiffs' five RICO claims allege that Defendants failed to assist each of them in maintaining or securing employment when they were laid off or otherwise dismissed by their

employers; in one case, Defendants are alleged to have interfered actively with a Plaintiff's employment status. Plaintiffs also allege practices including the mismanagement of union affairs and union funds but fail to connect these allegations in any way to the primary allegation of failing to adequately represent and assist union members. The mere mention of these acts (or, in Plaintiffs' words, "practices") does not help Plaintiffs to establish a pattern of racketeering activity. Moreover, Plaintiffs generally failed to provide any dates on which the alleged acts occurred so as to establish the presence of a pattern of racketeering.[3] Plaintiffs fail to offer any factual allegations that the acts against them were related, continuous or the product of a scheme against them, although they do offer this conclusion. In fact, throughout the Complaint Plaintiffs offer mostly conclusory allegations about Defendants' activities, *e.g.*, Plaintiffs were "harassed, retaliated against and singled out for [their] legitimate complaints against the union activities," or "the activities of the defendants are all part of an illegal course of conduct designed to punish dissident union members for speaking out . . . "). *Pl. Compl.* Count III - VI ¶¶ 6, 8.

While the Complaint may be construed to allege five predicate acts against five different victims, nothing about the Complaint suggests the existence of separate schemes that comprise a pattern. In their Response to Defendants' Motion, Plaintiffs assert that "[o]ver the course of three or four years the union, Local, and its leaders have set forth a pattern of racketeering

---

[3] In Count I, Plaintiff Menola alleges that on or about December 17, 2002, Christensen retaliated against him for his complaints about the union and his employment with Thyssen. Count I mentions no other dates – aside from the allegation that Defendants' "pattern of activities" occurred between 2002 and the present time – that might help to establish a pattern of racketeering by Defendants. In Count III, Plaintiff Lynch alleges that Defendants failed to take steps to remedy his improper termination "in or about 2003." No other dates are included in Count III. Count IV states that Plaintiff Brzozowski made complaints to and about Defendants between 2001 and the time the Complaint was filed, but fails to identify any time frame for Defendants' activities. Counts V and VI are the same (for this purpose) as Count IV.

activity towards the individual plaintiffs" and that the "element of continuity has been plead with specificity." Once again, however, Plaintiff is offering nothing more than a conclusion that Defendants' activities were part of a pattern of racketeering activity. Conclusions of this nature, lacking factual support, do not satisfy the requirements of § 1962(c). *Jones v. Lampe*, 845 F.2d 755, 758 (7th Cir. 1988) ("[m]erely stating these conclusions [that defendants engaged in fraud, extortion and conversion and that their actions constituted schemes], however, does not make the allegations sufficient . . . plaintiffs' characterization of events must be consistent with the facts alleged in the complaint"). Construing the allegations in the light most favorable to Plaintiffs, the facts at best show acts of retaliation against dissident union members by Defendants. As alleged, the facts do not constitute a pattern under RICO.

3. *Failure to Allege an Enterprise*

In order to state a claim under RICO, Plaintiffs must also allege the existence of an enterprise, defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact, although not a legal entity." 18 U.S.C. § 1961(4). An enterprise is an "ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990). Critically, an enterprise must be "more than just the pattern of racketeering activity." *United States v. Korando*, 29 F.3d 1114, 1117 (7th Cir. 1994). "[A]lthough a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does." *Jennings*, 910 F.2d at 1440.

Plaintiffs do not identify the scope, structure or nature of Defendants' purported enterprise in their Complaint. Plaintiffs merely allege that: 1) "through the repeated conduct of the defendants, they have engaged in an enterprise subject to a pattern of illegal, unlawful and improper activates (sic)," *Pl. Compl.* Count I ¶ 23; 2) "the activities of the INTERNATIONAL, LOCAL 2 and CHRISTENSEN were part of a (sic) enterprise that is covered pursuant to 18 USC 1951 et seq," *Pl. Compl.* Count III ¶ 13; and 3) "the activities of the defendants are all part of an enterprise that is covered pursuant to 18 USC 1951 et seq," *Pl. Compl.* Count IV, V and VI ¶ 12. Plaintiffs' Response to Defendants' Motion offers no further clarification. *See Pl. Resp.* at 4 ("[t]he enterprise under taken (sic) by defendants is an enterprise of mismanagement, misuse and potential embezzlement of union funds").

Plaintiffs are unable to identify the enterprise aside from describing the alleged racketeering activity. These conclusory allegations are insufficient, as a matter of law, to state a RICO claim. *Korando*, 29 F.3d at 1117; *and Jennings*, 910 F.2d at 1440. Moreover, while Defendants may have "gotten together" in order to persecute dissident union members, Plaintiffs have done no more than to allege a conspiracy – not a RICO enterprise. *See Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999). As Plaintiffs failed to allege three of the four elements of a RICO claim, their five RICO claims are dismissed.

### B. Preemption of Plaintiff Menola's Claim of Interference with Business Advantage

In Count II of the Complaint, Plaintiff Menola accuses Defendants of interfering with his employment at Thyssen Elevator Company ("Thyssen"). Construed as favorably to Menola as the Complaint permits, the allegations show that Menola secured employment at Thyssen after receiving permission to do so from Local 2's business agent. Thereafter, Christensen, who

8

harbored a grudge against Menola either because of Menola's past complaints against the union or because of Menola's employment with Thyssen, sought to retaliate against Menola. Christensen directed Thyssen to terminate Menola's employment and Menola lost his job.

Within Count II, Menola specifically alleges that Defendants were "aware of [his] lawful employment with Thyssen pursuant to both the collective bargaining agreement and an oral agreement of employment between Menola and Thyssen" and interfered with Menola's "employment agreement and the respective business advantage that would arise to him." *Pl. Compl.* Count II ¶¶ 18, 19. Based on these allegations, Defendant contends that adjudication of this "potential interference with business advantage" claim will require analysis and interpretation of a collective bargaining agreement and is therefore preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA").[4] Menola argues that the collective bargaining agreement is "tangential" to the facts alleged in his Complaint, and that to establish liability he must "allege and prove conduct that is outside and unprotected by any of the collective bargaining powers provided the union." *Pl. Resp.* at 2. For these reasons, Menola argues that his claim is not governed nor preempted by the LMRA.

When resolution of a state-law claim depends substantially upon interpretation of the terms of a collective bargaining agreement, the state-law claim will be preempted by section 301

---

[4] Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185.

of the LMRA. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). For example, a suit by an employee against his employer alleging tortious interference with a collective bargaining agreement is preempted by the LMRA because interpretation of the contract is not only "germane" but necessary to resolution of the dispute. *Kimbro v. Pepsico, Inc.*, 215 F.3d 723, 727 (7th Cir. 2000). *See also Turner v. AFT Local 1565*, 138 F.3d 878, 884 (11th Cir. 1998) (holding that section 301 preempts a tortious interference action against an employer when a collective bargaining agreement governed plaintiff's employment and interpretation of the agreement was necessary to resolution of the claim).

The doctrine underlying the decision in *Allis-Chalmers* extends to situations in which an employee sues her union. *See International Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859-62 (1987) (employee's breach-of-duty-of-care suit, recast by the Court as a "tortious breach-of-contract" claim, could not evade the "preemptive force of § 301 by casting her claim as a state-law tort action"). Menola's claim that Christensen and the other Defendants tortiously interfered in his employment at Thyssen in violation of the collective bargaining agreement – by the very words in the Complaint – falls squarely within the ambit of *Allis-Chalmers* and *Hechler*. Menola, however, also alleges that he had a separate, oral contract with Thyssen, with which Christensen and the union interfered.

This additional allegation does not render the collective bargaining agreement tangential to Menola's claim. None of the language within Count II suggests that the collective bargaining agreement was merely tangential to Menola's claim; in fact, the union's initial consent to his employment and the agreement itself are both mentioned as part of the basis for Menola's claim of interference. Moreover, any prospective business advantage that Menola might have accrued by means of his employment with Thyssen (presumably salary, benefits and continued

employment, as nothing else reasonably can be implied from the Complaint) would have been governed by the collective bargaining agreement. Plaintiff Menola's claim against Defendants for potential interference with business advantage is preempted by section 301 of the LMRA and is therefore dismissed.

For these reasons, Plaintiffs' Claims against all Defendants are DISMISSED. Defendants' Motion to Strike Plaintiffs' Response is DENIED AS MOOT.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: June 23, 2005